IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHANNON L.L., | § | |
|     PLAINTIFF, | § | |
| | § | |
| V. | § | CASE NO. 3:23-CV-1177-D-BK |
| | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
|     DEFENDANT. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636 and *Special Order 3*, this cause is before the Court for a recommendation in this appeal stemming from the cessation of Plaintiff's social security disability benefits. For the reasons that follow, the Commissioner's decision should be **REVERSED and REMANDED** for further proceedings.

## I. BACKGROUND

### A. *Procedural History*

In October 2018, the Commissioner found Plaintiff disabled due to symptomatic human immunodeficiency virus ("HIV") and HIV wasting syndrome and awarded her benefits. Doc. 10-1 at 120, 123, 132. In November 2019, the Commissioner determined that Plaintiff's condition had medically improved such that she was no longer disabled as of that date. Doc. 10-1 at 157, 160. Plaintiff timely contested the cessation of her benefits, Doc. 10-1 at 162, but her appeal was denied at all administrative levels, and she now appeals to this Court pursuant to 42 U.S.C. § 405(g).

*B. Factual Background*

Plaintiff was 30 years old at the time of the first administrative hearing. Doc. 10-1 at 125. She has a high school education and previous work as a caregiver and convenience store cashier. Doc. 10-1 at 329. In terms of her relevant medical history, Plaintiff presented to the hospital in July 2017 and tested positive for HIV with a viral load of 422,000 and CD4 count of 100. Doc. 10-1 at 500, 506, 570-71. By March 2019, Plaintiff's HIV was undetectable with the use of medications. Doc. 10-2 at 130.

In March 2021, Plaintiff attended a virtual appointment with physician assistant Jena Benik to establish HIV care. Doc. 10-2 at 466. At follow-up visits, Plaintiff was "very unstable" while walking due to balance issues and was using a cane. Doc. 10-2 at 455, 459. Plaintiff's mother provided her medical history because Plaintiff was suffering from memory loss and neurological issues, but she noted that the balance issues were new. Doc. 10-2 at 455, 459, 501. PA Benik referred Plaintiff to Parkland Hospital to enroll in its financial assistance program for a neurological workup to ascertain the cause of her balance deficits. Doc. 10-2 at 459.

Plaintiff continued to exhibit cognitive difficulty and neurological issues at follow-up visits with PA Benik, and her mother reported that Plaintiff fell regularly, could not feel her feet, and walked with a cane with difficulty. Doc. 10-1 at 510, 514, 518, 523, 528, 535, 537; Doc. 10-1 at 81. Nevertheless, there are no records in evidence from the subsequent neurology visit. *See* Doc. 10-1 at 426-27 (noting that while Plaintiff was seen by neurology at Parkland in September 2022, they would only address Plaintiff's seizure activity and would not provide medical evidence from the exam).

In August 2021, PA Benik opined that Plaintiff was permanently disabled. Doc. 10-2 at 477. She stated that Plaintiff could sit/stand/walk for two hours in an eight-hour workday and

was unable to climb stairs/ladders, kneel, bend, or lift/carry without falling. Doc. 10-2 at 477. PA Benik also noted that Plaintiff "may not be able to recall instructions due to memory loss" and that she had a severe, but currently undiagnosed, neurological disorder. Doc. 10-2 at 478. PA Benik attested that Plaintiff was thereby severely limited in her ability to (1) understand, carry out, and remember simple instructions; (2) exercise appropriate judgment; (3) deal with changes in a routine work setting; and (4) maintain sufficient concentration and pace, and she would be absent from work at least four days a month. Doc. 10-2 at 481.

The ALJ conducted a hearing in August 2021, during which PA Benik, Plaintiff, and Plaintiff's mother testified.[1] PA Benik averred that she had witnessed Plaintiff's memory loss when she struggled to give her medical history, did not know what medication she was on, and did not know how or when she contracted HIV. Doc. 10-1 at 80. PA Benik also testified that Plaintiff has peripheral neuropathy which causes pain and if she is not steadied in some way, she will fall and has no ability to catch herself. Doc. 10-1 at 80. Plaintiff's mother testified that Plaintiff's AIDS diagnosis and near death in 2017 seemed to have caused neurological damage, the resulting pain was debilitating, and Plaintiff fell so often she purchased a cane for her. Doc. 10-1 at 93-94. She described Plaintiff as "close to being illiterate" and averred she had been in special education since first grade, but after her AIDS diagnosis, her condition had deteriorated and affected her memory and ability to concentrate. Doc. 10-1 at 97-99.

At the close of the administrative hearing, the ALJ granted Plaintiff's request for a consultative exam ("CE"). Doc. 10-1 at 103-04. Dr. Barbara Dolan, Psy.D., conducted a psychological CE in February 2022 and observed that Plaintiff's gait was exceedingly slow, she

---

[1] At the time of the hearing, Plaintiff's mother was to receive her Ph.D. in psychology in approximately two weeks. Doc. 10-1 at 92.

walked with a cane, and she reported depression and anxiety. Doc. 10-2 at 489-50. Plaintiff's full scale IQ score was in the extremely low intellectual functioning range at 67, and Dr. Dolan diagnosed her with (1) major depressive disorder, recurrent, moderate; (2) generalized anxiety disorder; and (3) borderline intellectual functioning (provisional). Doc. 10-2 at 492-93. Dr. Dolan concluded that Plaintiff had moderate limitations in several areas and marked limitations in her ability to (1) make judgments on complex work-related decisions; (2) interact appropriately with the public; and (3) respond appropriately to typical work situations and changes in a routine work setting. Doc. 10-2 at 487.

At a supplemental administrative hearing in August 2022, a consulting clinical psychologist, Dr. Jennifer Blitz, Psy.D. testified that Plaintiff had the medically determinable impairment of unspecified depressive disorder. Doc. 10-1 at 49. She noted that there seemed to be recent evidence of substantial cognitive impairments and other significant limitations, with Plaintiff's IQ having dropped from 90, as a child, to 67, but Dr. Blitz was unable to specify the cause because there were no neurological or neuropsychological evaluations in the record. Doc. 10-1 at 48-49. Dr. Blitz opined that "up until 2019," Plaintiff had only (1) mild impairment in understanding, remembering, or applying information; (2) mild impairment in interacting with others; (3) no impairment in concentrating, persisting, or maintaining pace; and (4) no impairment in adapting or managing oneself. Doc. 10-1 at 49.

In September 2022, PA Benik's supervising physician, Dr. Tri Luong, D.O., completed a Physical Residual Functional Capacity Assessment Form, finding that Plaintiff could lift/carry a maximum of ten pounds, required a hand-held assistive device for ambulation, and had to periodically alternate sitting and standing to relieve pain or discomfort. Doc. 10-2 at 542. Dr. Luong noted that Plaintiff had difficulty with balance and was a fall risk and that—together with

her difficulty lifting, pushing, and pulling—required a neurological consultation. Doc. 10-2 at 542. Additionally, Dr. Luong indicated Plaintiff "struggles with forming words from thoughts" and has "gaps" in both her short- and long-term memory. Doc. 10-2 at 545, 549-50.

### C. The ALJ's Findings

In November 2022, the ALJ issued a decision finding that Plaintiff has had the severe impairments of depression, a learning disability, and HIV since November 2019 when it was determined that her condition had improved. Doc. 10-1 at 19. The ALJ noted that the only evidence of an alleged neurological disorder were PA Benik's, Plaintiff's, and Plaintiff's mother's reports of Plaintiff's balance issues and difficulty walking. Doc. 10-1 at 22. Nevertheless, the ALJ determined Plaintiff had the residual functional capacity ("RFC") to lift/carry up to 20 pounds occasionally and ten pounds frequently and stand/walk/sit for six hours in an eight-hour workday. Doc. 10-1 at 24. Further, the ALJ found that Plaintiff can understand, remember, and carry out simple instructions, tolerate occasional changes in a work setting, and make simple work-related decisions. Doc. 10-1 at 24.

In reaching this conclusion, the ALJ rejected as unpersuasive the opinions of PA Benik, Dr. Dolan, Dr. Luong, and several state agency medical consultants ("SAMCs"). Doc. 10-1 at 26-27. Instead, the ALJ relied on a February 2020 SAMC opinion that Plaintiff could perform a full range of medium work, although the ALJ lowered the exertional level from medium to light. Doc. 10-1 at 26. The ALJ also found Dr. Blitz's opinion that Plaintiff's depressive disorder did not meet or equal a listing generally persuasive, but increased to "moderate" the effect the disorder has on Plaintiff's ability to understand, remember, and apply information. Doc. 10-1 at 27. Although the ALJ determined that Plaintiff could not perform her past relevant work, she

concluded Plaintiff could perform other work available in the national economy and was thus no longer disabled. Doc. 10-1 at 27-28.

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the Commissioner considers (1) whether the claimant is engaged in substantial gainful activity; (2) the severity and duration of the claimant's impairments; (3) whether the claimant's impairment "meets or equals" one of the listings in the relevant regulations; (4) whether the claimant can still do her past relevant work; and (5) whether the impairment prevents the claimant from doing any other available work. *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021) (citing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden on the first four steps. *Id.* (citation omitted). Thereafter, the burden shifts to the Commissioner to "prove the claimant's employability." *Id.* (citation omitted).

The Court's review "is exceedingly deferential and limited to two inquiries: whether substantial evidence supports the ALJ's decision, and whether the ALJ applied the proper legal standards when evaluating the evidence." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (quotation marks and citation omitted). The Court can neither "reweigh the evidence or substitute its judgment for the Commissioner's." *Id.* A finding that substantial evidence does not exist "is appropriate only if no credible evidentiary choices or medical findings support the decision." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (citation omitted).

## III. ANALYSIS[2]

Plaintiff argues the ALJ failed to properly develop the record regarding the existence of a neurological or neurocognitive impairment and instead based the RFC assessment on her own lay interpretation of the medical evidence instead of a treating source's or CE's opinion. Doc. 15 at 19-22. Plaintiff maintains that she clearly has a medically definable impairment ("MDI"), even if the cause is not known, and the Act does not require a claimant to identify the MDI by name, but does trigger the ALJ's duty to develop the record by ordering a CE. Doc. 15 at 21-23.

Defendant responds that the ALJ was not obligated to order a neurological CE because there is sufficient evidence in the record to support the ALJ's decision that there was no MDI to support Plaintiff's reported symptoms. Doc. 17 at 2-4.

An ALJ has a duty "to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984)). An ALJ fulfills this duty by ordering a CE when it is "necessary to enable the ALJ to make the disability determination." *Id.* An ALJ's duty to develop the record is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (5th Cir. 2001). And "[a] consultative examination is required . . . only if the record establishes that such an examination is *necessary* to enable the ALJ to make the disability decision." *Hardman v. Colvin*, 820 F.3d 142, 148 (5th Cir. 2016) (cleaned up) (emphasis in original). Further, the decision to require a CE is within the ALJ's discretion.

---

[2] Because reversal is warranted based on Plaintiff's first argument, the Court does not reach the second.

*Pierre v. Sullivan*, 884 F.2d 799, 802-03 (5th Cir. 1989).  The court will reverse the Commissioner only "if the claimant shows that (1) the ALJ failed to fulfill his duty to develop the record adequately and (2) that failure prejudiced the plaintiff." *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) (citation omitted).

      Here, the Court finds that the ALJ erred in not ordering a neurological or neuropsychological CE.  As discussed *supra*, the record is replete with evidence that Plaintiff had mobility, balance, and extensive memory issues.  The ALJ essentially dismissed these problems, finding there was "no known neurological medically determinable impairment that would cause these symptoms."  Doc. 10-1 at 27; *see also* Doc. 10-1 at 27 ("Dr. Luong acknowledged that there was no known neurological medically determinable impairment, and provides no other explanation that would cause the claimant to have a reduced ability to lift/push/pull.").

      Given the ALJ's disregard for such evidence from these medical sources and seeming insistence on empirical, objective evidence of such, it is apparent that the ALJ incorrectly applied the law.  This case is similar to *Scroggins v. Astrue*, 598 F.Supp.2d 800, 803 (N.D. Tex. 2009). There, the ALJ found that the claimant's anxiety and depression were not MDIs because she had not been treated for those conditions.  598 F.Supp.2d at 803.  The district court reversed, noting that while one of the claimant's doctors did not treat her for anxiety and depression and was not a mental health care professional, he refilled her prescription medications on at least two occasions, which provided evidence in support of an MDI.  *Id.* at 806.  Additionally, two other doctors had noted the claimant's history of anxiety and a fourth had diagnosed her with depression and anxiety.  *Id.*  The district court concluded that although the claimant had not presented laboratory findings of mental impairments or treatment records from a mental health

professional, "the statements from these four doctors cannot be dismissed out of hand since all are acceptable medical sources who can provide evidence to establish the existence of [an MDI]." Accordingly, the court remanded the case with instructions for the ALJ to order a CE. *Id.* at 807; *see also Martin v. Colvin*, 165 F. Supp. 3d 506, 511 (N.D. Tex. 2016) (reversing and remanding under similar circumstances).

More recently, the Fifth Circuit reversed the denial of benefits where the claimant's treating physician was "not clear" regarding "what medical conditions resulted in limitations" and did not provide specific functional limitations, but instead, simply opined the claimant had "impaired ambulation" which the ALJ found too vague. *Hardine v. Kijakazi*, No. 21-60226, 2022 WL 2070399, at *2 (5th Cir. June 8, 2022). The appellate court noted that a CE could have "confirmed, disproved, or clarified the existence or extent of the purported limitations noted by" the claimant's physician and "resolved the gaps in the record" concerning the definitive nature of the claimant's diagnosis. *Id.* The same holds true here.

Moreover, the ALJ's error in this case prejudiced Plaintiff because the ALJ was required to consider all of her MDIs, including those that were not severe, in addition to all of the relevant medical and other evidence in the record. *See* 20 C.F.R. §§ 404.1545(a)(2)-(3), 416.945(a)(2)-(3). As discussed above, Plaintiff also presented evidence that could support a finding that her balance and memory problems are neurological in nature. *See, e.g.*, Doc. 10-1 at 50 (Dr. Blitz's testimony that "I would imagine it's something medical" and that Plaintiff has "some significant medical problems that could cause changes to the brain that are unrelated to a psychiatric condition.").

Accordingly, reversal is warranted. *Hardine*, 2022 WL 2070399, at *2-3.

9

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision should be **REVERSED and REMANDED** for further proceedings.

**SO RECOMMENDED** on July 25, 2024.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).